This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Rasheeda Hopkins, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her child, Timiah Smith, and granted permanent custody to Summit County Children Services Board ("CSB"). We reverse.
According to the trial court, Hopkins' family has "a significant history across several generations with both CSB and this Court." The details of that history, however, are not in the record before this Court. What the record does reveal is that Rasheeda Hopkins gave birth to her first child at the age of seventeen and, by the age of twenty-five, she had given birth to three more children and was pregnant with her fifth child. CSB has had involvement with each of the children but the reasons for its involvement are not clear. Hopkins has an IQ of seventy, but there was no evidence produced at the hearing, and few details even in the case plans, as to how an IQ of that level would impact on her ability to care for her children.
Hopkins has never had her parental rights to the other children terminated. Although there was some involuntary involvement by CSB, Hopkins voluntarily placed each of her other children in the legal custody of a friend or relative, continued to visit them on a regular basis, and was focusing on regaining custody of the child at issue in this case, Timiah.
Timiah Smith was born December 20, 1998. She was removed from the home by CSB in August 1999 following an incident of domestic violence between Hopkins and Willie Smith, Timiah's father.[1] Smith had a prior conviction for domestic violence against Hopkins. Timiah was adjudicated dependent and placed in the temporary custody of CSB on October 5, 1999.
Temporary custody was extended twice, the second time following a hearing before the trial court, as required by R.C. 2151.415(D)(2). The trial court ordered an extension of temporary custody, finding that it was in Timiah's best interest. Hopkins was making progress on her case plan, visitation had increased, and, according to the trial court's order, it was anticipated that visitation would be extended even further and that Timiah would be returned to her mother.
On June 4, 2001, CSB moved for permanent custody. On July 9, 2001, a hearing commenced on CSB's motion for permanent custody and on Hopkins' motion for legal custody. On August 2, 2001, the trial court granted CSB's motion for permanent custody. Hopkins appeals and raises three assignments of error that will be addressed together because Hopkins argued them jointly.
 Assignment of Error I The trial court erred in finding that it is in the minor child's best interest that she be placed in the permanent custody of CSB as the prosecution failed to meet its burden of proof requiring clear and convincing evidence.
 Assignment of Error II The trial court erred in granting CSB's motion for permanent custody thereby terminating the parental rights of Appellant Hopkins as the trial court's findings were against the manifest weight of the evidence which could only lead to one conclusion that being contrary to the judgment of the trial court.
 Assignment of Error III The trial court erred in granting CSB's motion for permanent custody as appellant Hopkins substantially complied with her case plan requirement.
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), Summit App. No. 18983, unreported, at 3. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175.
Termination of parental rights is an alternative of last resort, but is sanctioned when necessary for the welfare of a child. In re Wise (1994),96 Ohio App.3d 619, 624. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, who is neither abandoned nor orphaned, it must find clear and convincing evidence of both prongs of the statutory test:
 (1) that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent or that the child has been in the temporary custody of the agency for more than twelve of the last twenty-two months and
 (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).
See R.C. 2151.414(B)(1); see, also, In re William S. (1996),75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Hopkins does not dispute that the first prong of the test was satisfied because Timiah had been in the temporary custody of CSB for more than twelve of the twenty-two consecutive months prior to the hearing. Her assignments of error all pertain to the trial court's finding that permanent custody to CSB was in Timiah's best interest. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must:
[C]onsider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed * * * through the child's guardian ad litem[;]
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
R.C. 2151.414(D)(1)-(4)[2]. Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors.
CSB presented the following witnesses: the foster mother, a social worker from Akron City Hospital, the CSB caseworker assigned to the case, and a social worker from Akron General Medical Center. Testifying on behalf of Hopkins were the psychiatrist who treated her, the youth advocate for the battered women's shelter where Hopkins resided for a few months, the CSB employee who supervised Hopkins' visits with Timiah, the friend with whom Hopkins resides, and Hopkins herself. The guardian adlitem also gave an oral report to supplement the written reports that he had previously filed with the court. We will detail the evidence as it pertained to each of the statutory factors.
CSB presented no evidence of the interaction and interrelationship between Hopkins and Timiah, between Timiah and her other siblings, or between Hopkins and the other children. It presented no evidence of Hopkins' ability to care for Timiah. CSB did present the testimony of the foster mother who testified in limited detail as to her relationship with Timiah. According to the foster mother, Timiah had made developmental progress while in her care.[3] The foster mother said little about her interaction or bonding with Timiah but she did indicate that she was not interested in adopting her.
Hopkins, on the other hand, presented four witnesses who testified about her relationship with Timiah, with her other children, and Timiah's relationship with her siblings. Although the trial court's order includes a notation that it considered all the evidence and its failure to detail specific evidence should not imply that the trial court failed to consider it, given the wealth of evidence presented on this issue, the trial court's failure to attach any significance to it is not without implications.
Hopkins testified on her own behalf, but also presented the testimony of the CSB visitation aide who supervised her visits at the CSB visitation center, the youth advocate from the battered women's shelter where she resided for approximately three months, and the testimony of the friend with whom she resides who supervised Hopkins' overnight home visits with Timiah. Each of these witnesses testified about a positive relationship between Hopkins and Timiah.
It is significant to this court that the CSB visitation aide, Sherrell Davidson, a twenty-one-year employee of the agency that moved for permanent custody, testified on behalf of the mother. Davidson explained that Hopkins' initial visits with Timiah were at the visitation center but the visits were later expanded to off-site visits "because Rasheeda was doing so well." Davidson took Hopkins and Timiah to restaurants, stores, and parks to see whether Hopkins would act appropriately with Timiah in these different settings. She noted that Hopkins chose age-appropriate seating and food for Timiah at the restaurant and she secured her in a shopping cart at the store and never let her out of her sight.
Davidson observed Hopkins try "really hard during visits to make sure that she had a strengthening and stimulating visit." Davidson, who has taught parenting classes in the past, explained that Hopkins would bring materials from her parenting classes to the visits so that she could apply what she had learned. She watched the bond between Hopkins and Timiah grow and the relationship strengthen as the visits progressed. Davidson further testified that it was her belief that Hopkins really loves Timiah. Based on her many observations of the two, Davidson opined that Hopkins could parent Timiah on a one-to-one basis over a long period of time.
Davidson never observed any inappropriate behavior by Hopkins. The only negative moment that she was able to recall was when Hopkins cried at Timiah's birthday party because she had forgotten the candles for the cake. The witness explained that Hopkins had wanted everything to be perfect for the party because she feared that it might be the last birthday that she was able to celebrate with Timiah. This evidence only tends to demonstrate that Hopkins loves her child and does not want to lose her.
The youth advocate at the battered women's shelter was the one who supervised Hopkins' visits with Timiah while she was staying at the shelter. He did not testify in great detail, but he explained that Hopkins visited with Timiah and her other children weekly and he had the opportunity to observe them on several occasions. He believed that Hopkins and her children had a healthy relationship and she acted appropriately with them. He testified that Hopkins was a very active participant in the parenting classes offered at the shelter and that she participated in all the programs offered.
The friend with whom Hopkins lives also testified that Hopkins has lived with her for several months and that, during that time, she has observed Hopkins visit with all of her children on a regular basis. She has not seen Hopkins act inappropriately with any of them. She expressed her opinion, based on her ongoing experience, that Timiah loves her mother and that Hopkins has the ability to care for both Timiah and her then unborn child.
This first statutory factor is highly significant and, based on the evidence presented in this case, clearly weighs in favor of the mother. This Court typically reviews permanent custody decisions where the parent failed to regularly attend visitation, visitation failed to progress beyond weekly hour-long visits at the CSB visitation center, and the child has no bond to the parent or to siblings who were placed in separate homes. The evidence in this case, however, was quite different: the mother was visiting her child regularly and visitations had expanded to overnight visits at her home; the mother was making efforts to maintain a relationship between this child and her other children; and she was observed by disinterested witnesses applying the parenting skills that she had learned and acting appropriately with her children and developing and maintaining a bond with them. Yet, in its twenty-two-page judgment entry, the trial court seems to discount all of this evidence. Despite its disclaimer to the contrary, the implication to this Court is that the trial court failed to adequately consider this evidence.
Timiah's custodial history was that she had been in the temporary custody of CSB for the past twenty-one months, which represented most of her short life. While this long period away from Hopkins is significant, the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child. Again, this Court would typically see in a situation where the child has been in temporary custody for an extended period of time a child who is not attached to her mother, is attached to the foster family, and the foster family wants to adopt her. That is not the situation here. Timiah has been with the foster family for most of this period, but the foster parent is not interested in adopting her.
Temporary custody was purportedly extended by the trial court because Hopkins was making progress. Hopkins had completed parenting classes and anger management classes, had secured stable housing, and was receiving treatment for her mental condition.
At the permanent custody hearing, however, the CSB caseworker admitted that the primary reason that CSB moved for an extension of temporary custody was so that it would have a stronger case against Hopkins. Reunification was no longer its goal. When asked why visitation was not expanded further, the CSB caseworker indicated that her supervisor had a "gut feeling" that placement with Hopkins would not work out, but she gave no specific reasons that related to Hopkins' parenting ability.
As Timiah was only two-and-a-half years old at the time of the permanent custody hearing, her wishes were expressed through the guardianad litem, who had been involved in the case since shortly after Timiah was removed from the home. The guardian ad litem indicated that he believed that it would be in the best interest of Timiah to be returned to her mother. He explained that he had visited Hopkins several times since Timiah had been removed from her home and observed a positive relationship between Hopkins and Timiah as well as her other children. In his opinion, Hopkins had gone "above and beyond the call of duty in responding to the requests of CSB."
The trial court noted that it attached little weight to the report of the guardian ad litem, however, and failed to even note what the report said. The trial court considered instead the testimony of the CSB caseworker who did observe Timiah with her foster family. This was error for two reasons: the court did not have the option of disregarding the report of the guardian ad litem for the reasons it stated and (2) it has no authority to consider the child's wishes as expressed by the CSB caseworker, a representative of the very agency that moved for permanent custody.
R.C. 2151.414(D)(2) explicitly requires the trial court to consider the guardian ad litem's report as an expression of the wishes of a child who is too young to express them herself. The court does not have the option of disregarding it. The trial court noted that it essentially was disregarding the report of the guardian ad litem because he had not made a visit to the foster family's home to observe Timiah there. This Court knows of no statutory requirement, however, that the guardian ad litem
visit the foster family. The guardian ad litem had explained that he saw no reason to observe the child with the foster family because they had indicated that they were not interested in adopting her. His justification for not visiting with the foster family does not seem unreasonable. The foster parents are not parties to the proceeding and their interests are often at odds with those of the parent. See In theMatter of Hunt (Nov. 26, 1985), Lawrence App. No. 1762, unreported, 1985 Ohio App. LEXIS 9507, * 8.
Not only did the trial court fail to consider the report of the guardian ad litem, but it considered instead the testimony of the CSB caseworker because she did observe Timiah with her foster family. While the caseworker's testimony may be considered as evidence of the interaction and interrelationship of the child with the foster family, it cannot be considered as an expression of the child's wishes in lieu of the guardian ad litem's report. R.C. 2151.414(D)(2) authorizes only the guardian ad litem to express the desires of the child.
R.C. 2151.281(B)(1) requires that the guardian ad litem be neutral and detached from the parties, explicitly stating that "[t]he guardian ad litem * * * shall not be the attorney responsible for presenting the evidence alleging that the child is an abused or neglected child and shall not be an employee of any party in the proceeding."
CSB failed to present any evidence on the fourth best interest factor, "[t]he child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency" other than the fact that there are no relatives available to take legal custody of Timiah. Arguably, all children need a secure placement, but no evidence was presented as to this child's specific needs for a secure placement or that they could not be achieved without granting permanent custody to CSB. CSB presented no evidence of Hopkins' ability or inability to care for Timiah. The only evidence of her parenting ability came through Hopkins' own witnesses who expressed their opinions, based on numerous observations of Hopkins and Timiah, that Hopkins could provide a long-term home for Timiah.
Given the reasoning expressed by the trial court, it appears to have based its best interest determination primarily on factors not enumerated in R.C. 2151.414(D). Specifically, the trial court relied on its determination that Hopkins had not substantially complied with her case plan and that she was unable to adequately regulate her own diabetes. Although the trial court is not precluded from considering factors in addition to those explicitly enumerated in R.C. 2151.414(D), it cannot allow such additional factors to consume the factors explicitly enumerated.
Moreover, the trial court seems to have lost its way in arriving its conclusion that Hopkins failed to substantially comply with the requirements of her case plan and that she would be unable to monitor her problems with diabetes. The evidence demonstrated that Hopkins had secured stable housing, had completed parenting classes and was applying what she had learned, was visiting regularly with Timiah, had ended her relationship with Smith, and was addressing her mental health issues with professionals. The trial court placed undue weight on lay testimony about Hopkins' psychiatric and medical conditions
As to Hopkins' control of her mental condition, her former psychiatrist testified Hopkins had been diagnosed with impulse control disorder and was being treated through medication and monthly psychotherapy sessions. The psychiatrist explained that he had advised Hopkins to stop taking her medication when she informed him that she was pregnant. Hopkins had two or three appointments with him after she discontinued her medication. He observed no change in her behavior and opined that she could control her anger without medication and with psychotherapy. The trial court, however, discounted the testimony of the expert and instead focused on the lay testimony of the CSB caseworker who observed an increase in Hopkins' anger after she discontinued her medication.
Hopkins had also been diagnosed with diabetes eight months before the hearing. The trial court concluded that, because Hopkins had been hospitalized several times during one of those eight months, that her diabetes was going to be a life-long problem that she could not manage and that would impact her ability to care for Timiah. The trial court came to the conclusion based on the testimony of a hospital social worker who simply testified to the fact that Hopkins had been hospitalized. No doctor or nurse testified as to the impact of Hopkins' diabetic condition on her life.
CSB and the trial court found it very significant that Hopkins was admitted to the hospital several times during a one-month period due to irregularities in her blood-sugar level. There was no evidence of any hospitalizations before or after that month, however, despite the fact that Hopkins had been treating her own diabetes for eight months. More importantly, without any evidence from a medical expert, this Court does not understand how the trial court could make any conclusions about the future impact of this medical condition on Hopkins' life.
Given the great weight of evidence against the trial court's finding that permanent custody to CSB was in Timiah's best interest, the trial court lost its way in reaching that conclusion. The assignments of error are sustained. The judgment of the trial court is reversed and remanded.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
BATCHELDER, P.J., CARR, J. CONCUR.
[1] Smith is not the father of Hopkins' oldest children. The violence between the two was not the reason for CSB's initial involvement with Hopkins and her children.
[2] The factor set forth is R.C. 2151.414(D)(5) is not relevant in this case.
[3] Timiah apparently has some developmental delays but no evidence of the specific details was presented at the hearing.